**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| CHANDAN UNCHAGERI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. |
| v. ) | |
| ) | |
| YUPPTV, INC. and YUPPTV USA INC., ) | |
| ) | **JURY DEMANDED** |
| Defendants. ) | |

**CLASS ACTION COMPLAINT**

Plaintiff, Chandan Unchageri, on behalf of himself and a class of similarly situated consumers, brings this claim against Defendants, YuppTV, Inc. and YuppTV USA Inc., for monetary damages and injunctive relief as a result of unsolicited telemarketing text messages sent to his and the proposed class members' cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and its implementing regulations at 47 C.F.R. § 64.1200, *et seq.*

*Parties and Jurisdiction*

1. Plaintiff Chandan Unchageri ("Chandan Unchageri") is a natural person and a citizen of the State of Illinois, at all relevant times residing in this district.

2. Chandan Unchageri is a "person" as that term is used in the TCPA and defined at 47 U.S.C. § 153(39).

3. Defendant YuppTV, Inc. is a Delaware corporation and, on information and belief, is the parent company of co-Defendant YuppTV USA Inc. YuppTV, Inc. bills itself as "one of the world's largest Internet TV provider [*sic*] of Live TV, Catch-up TV, and Movies."

4. Defendant YuppTV Usa, Inc. is a Georgia corporation headquartered in Atlanta, Georgia that proclaims on its website that it "is a pioneer and one of the World's latest [*sic*] online Over-the-top (OTT) entertainment solutions provider [*sic*] . . ." Available in 12 languages, YuppTV USA, Inc. is an internet based television service that specializes in providing South Asian media programming to audiences living in the United States.

5. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts that give rise to this action occurred, in substantial part, in this district. Venue is also proper in this district because Defendants transact substantial business in this district.

### *Brief Overview of the Telephone Consumer Protection Act*

7. The Telephone Consumer Protection Act was enacted to prevent companies like Defendants from invading American consumers' privacy and to prevent abusive robo-calls and unsolicited and unwanted text messages.

8. To that end, the TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls and text messages on their cellular telephones. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

9. According to the Federal Communications Commission, ("FCC"), unwanted calls and text messages are the number one complaint the Commission receives. There are thousands of complaints to the FCC every month about telemarketing, unwanted text messages and robocalls. The FCC received more than 215,000 TCPA complaints in 2014 alone.

10. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims*, 132 S. Ct. at 744 (2012) ("The Act bans certain practices invasive of privacy").

11. As is relevant here, the TCPA prohibits Defendants from making telephone calls "using any automatic telephone dialing system . . . to any telephone number assigned to a … cellular telephone service …" 47 U.S.C. § 227(b)(1)(A)(iii).

12. "Automatic telephone dialing system" ("ATDS") refers to any "equipment which has the capacity … (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

13. It is well settled in this district that although text messaging capability did not exist when Congress enacted the TCPA in 1991, § 227 of the Act applies to text messages, which are encompassed within the TCPA's use of the word "call." See *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008 (N.D. Ill. 2010).

14. The FCC's 2015 TCPA Declaratory Ruling and Order, adopted on June 18, 2015 and released on July 10, 2015, confirmed that text messages are "calls" under the TCPA.

### *Factual Allegations Specific to Plaintiff Chandan Unchageri*

15. Between May 14, 2015 and November 30, 2015, Defendants sent, or caused to be sent, twelve (12) unwanted telemarketing text messages to Plaintiff's wireless telephone number. Attached hereto as Group Exhibit **A** are screenshots from Plaintiff's cellular telephone showing each of these unsolicited text messages.

16. The twelve text messages received by Plaintiff were sent, or caused to be sent by Defendants from seven separate and distinct phone numbers, all with different area codes: one message was sent from (816) 987-7717; four messages were sent from (646) 762-5494; two messages were sent from (740) 513-2591; two messages were also sent from (559) 332-4781; one message was sent from (863) 734-6116; one message was sent from (754) 333-5207; and one message was sent from (202) 751-4093.

17. Defendants, or someone directed by Defendants on their behalf, sent these unsolicited commercial text messages to the cellular telephone of Plaintiff by means of an automatic telephone dialing system ("ATDS"), that is to say by using specialized equipment having the capacity to dial numbers without human intervention to make telephone calls or send text messages.

18. After having already received seven of these unwanted text messages sent by Defendants and/or their agents to his wireless telephone number, on June 26, 2015 Plaintiff received yet another telemarketing text message, sent or caused to be sent by Defendants from telephone number (559) 332-4781. That text message, whose content was similar to the previous seven, stated as follows: "Say no to cable and Satellite TV. Switch to YuppTV and get upto 6months free. Offer ends this week. Call 18666637557 or www.yupptv.com. Reply STOP to unsubscribe"

19. On July 1, 2015, Plaintiff responded to this text message by texting back "Stop." Defendants autoreplied immediately, with a text message that read "You have successfully been unsubscribed. You will not receive any more messages from *this number*." (emphasis added)

20. To be sure, Defendants and/or their agents did not send Plaintiff any further text messages from telephone number (559) 332-4781. They did not, however, completely cease sending unsolicited promotional text messages to his cellular telephone number.

21. On July 30, 2015, despite having recently informed Plaintiff that he had successfully unsubscribed, Defendants sent or caused to be sent another unwanted telemarketing text message to Plaintiff's wireless telephone number, this time from telephone number (754) 333-5207.

22. Yet again, on October 10, 2015, Defendants and/or their agents sent another unsolicited commercial email to Plaintiff's cellular telephone number, this time from telephone number (202) 751-4093.

23. Immediately upon receipt of the October 10, 2015 unwanted text message, Plaintiff texted back "Stop," hoping to end once and for all the barrage of unsolicited telemarketing text messages being sent or caused to be sent by Defendants to his cellular telephone number.

24. As they had done in response to Plaintiff's first attempt to unsubscribe, Defendants again autoreplied with that same text message reading "You have successfully been unsubscribed. You will not receive any more messages from this number."

25. Unfortunately, however, Plaintiff's second attempt to unsubscribe was no more availing than his first. On November 30, 2015, Defendants and/or their agents sent yet another unwanted promotional text message to Plaintiff's wireless telephone number using telephone number (646) 762-5494 – a number Defendants had used three time previously to send Plaintiff unsolicited text messages, but one from which he had not specifically unsubscribed.

26. Plaintiff never shared his cellular telephone number with Defendants.

27. Plaintiff never provided Defendants with the prior express written consent that would be required for him to receive telemarketing text messages delivered via an ATDS or autodialer to his wireless phone.

28. Plaintiff never entered into any agreement with or opened an account with the Defendants.

28. As of October 2013, the FCC eliminated any exception from the prior consent requirement for a pre-existing business relationship.

29. Defendants and/or their agents sent unsolicited text messages that harmed Plaintiff by causing the very harm that Congress sought to prevent – a "nuisance and invasion of privacy."

30. Defendants and/or their agents' unwanted commercial text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's' rights and interests in his cellular telephone.

31. Defendants and/or their agents' unsolicited telemarketing text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in his cellular telephone line.

32. Defendants and/or their agents' phone calls harmed Plaintiff by intruding upon his seclusion.

33. Additionally, Defendants and/or their agents' phone calls harmed Plaintiff by causing Plaintiff aggravation and annoyance, wasting Plaintiff's time, and depleting the battery life on Plaintiff's wireless telephone.

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227(b)(1)(C), ("TCPA") ON BEHALF OF PLAINTIFF AND THE PROPOSED CLASS

34. Plaintiff realleges and incorporates paragraphs 1 through 33 above as if fully set out herein.

35. Plaintiff brings this TCPA claim on behalf of himself and all other persons similarly situated, as members of the proposed Plaintiff's Class (the "Class") and under Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

36. Plaintiff proposes the following class definition, subject to amendment as appropriate:

**The TCPA Class:**

All persons within the United States who, within the four years prior to the filing of this Complaint (the "TCPA Period"), received one or more unwanted telemarketing text messages on their cellular telephones sent by or on behalf of the Defendants by means of an automated telephone dialing system, and who at no time provided the Defendants with the prior express written consent that would have permitted the Defendants to send such text messages without violating the Telephone Consumer Protection Act.

37. Upon information and belief, as part of Defendants' policy and practice they regularly used an automatic telephone dialing system to send unwanted promotional text messages to Plaintiff's and the class members' cellular telephones.

38. Defendants sent these text messages to cellular telephones without the called party's prior express permission or written consent.

39. This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, predominance, adequacy, and/or superiority requirements of that Rule. Plaintiff does not currently know the exact size of the class as such information is in Defendant's possession due to the nature of the trade and business involved.

40. Common questions of law and fact exist as to all members of the class and predominate over any questions affecting individual members of the class, including Plaintiff. Such common questions include, but are not limited to, the following:

a. Whether Defendants and/or their agents used an automatic telephone dialing system within the meaning of the TCPA;

b. Whether Defendants had prior express written consent under the TCPA when they sent unwanted telemarketing text messages to Plaintiff's and class members' cellular telephones;

c. Whether such practices violated the TCPA.

41. On information and belief, there are more than 40 members in the class, and the class members are so numerous that joinder is impracticable.

42. Class action treatment is superior to other alternative actions for the fair and efficient adjudication of the dispute, and no difficulties are anticipated in the management of this action because the identities of class members are readily ascertainable from Defendant's records.

43. Plaintiff Chandan Unchageri is an adequate representative of the proposed Class because his interests do not conflict with those of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions. Fed. R. Civ. P. 23(a)(4).

44. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

45. Additionally, the Court and the parties would enjoy economies in litigating common issues on a class-wide basis instead of a repetitive, individual basis.

46. Defendants have acted on grounds that apply generally to the Class, namely the sending of telemarketing text messages using an ATDS without the prior express written consent of the receiving party, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2).

47. At all times mentioned herein and within the four years prior to the filing of this Complaint, Defendants and/or their agents sent unsolicited telemarketing text messages to Plaintiff and the Class members on their cellular telephones using an ATDS.

48. Defendants and/or their agents contacted Plaintiff and the Class members by means of text messages sent to their cellular telephones without prior express written consent.

49. The text messages sent by or on behalf of Defendants to Plaintiff and the members of the proposed class were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

50. As a result of each text message sent in violation of the TCPA, Plaintiff and the members of the proposed Class are entitled to an award of $500.00 in statutory damages for each text message in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 C.F.R. § 64.1200(a)(1)(ii), or to treble statutory damages in the amount of $1,500.00 for each text message sent in willful or knowing violation of the TCPA under 47 U.S.C. § 227(b)(3).

51. The TCPA also expressly authorizes injunctive relief to prevent future violations of the Act. 47 U.S.C. § 227(c)(3)(A), (C).

52. Accordingly, Plaintiff additionally requests that this Court, on behalf of himself and on behalf the proposed Class, grant injunctive relief and order Defendants to immediately cease engaging in the sending of unwanted telemarketing text messages in violation of the TCPA.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendants YuppTV, Inc. and YuppTV USA Inc., and for the following relief:

(A) Certification of the class action with Plaintiff as class representative for the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and undersigned counsel as counsel for the Class, and designating this Complaint the operable complaint for Class purposes;

(B) An order enjoining Defendants and/or their agents from engaging in future communications in violation of the TCPA;

(C) Entering judgment that Defendant violated 47 U.S.C. § 227(b)(3);

(D) Awarding Plaintiff and the Class members statutory damages in an amount of $500.00 per phone call in violation of the TCPA, or an amount to be determined at trial;

(E) Awarding treble damages for each violation determined to be willful and/or knowing under the TCPA, to be determined at trial;

(F) Any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand a trial by jury in this action.

## DOCUMENT PRESERVATION DEMAND

Plaintiffs hereby demand that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request

that such third party also take steps to preserve the materials. This demand shall not narrow the

scope of any independent document preservation duties of Defendants.

>                                   Respectfully submitted,
>
>
>                                   By: /s/ Lance A. Raphael
>                                   One of Plaintiff's Attorneys

Lance A. Raphael
Craig R. Frisch
The Consumer Advocacy Center, P.C.
180 West Washington Street, Suite 700
Chicago, IL 60602
(312) 782-5808